UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN ELLERSICK, DAVID ELLERSICK, LEWIS C.
YOUNGS, JR., RICHARD CURRY, JR., AND RICHARD
H. TEMPLE, on Behalf of Themselves and all Others
Similarly Situated,

                                Plaintiffs,                      10-CV-6525(G)(P)

    -vs-

MONRO MUFFLER BRAKE, INC. and
MONRO SERVICE CORPORATION,

                                Defendants.
_____

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION STAY DISCOVERY**
_____

## **INTRODUCTION**

It is difficult to find any consistency in Defendants' arguments in this overtime lawsuit. For example, Defendants first stipulated that their Section 7(i) exemption defense to Plaintiffs' overtime claims was the predominate common issue in the case that should be resolved on a class wide basis, only to bring a motion to decertify the conditionally certified FLSA action and deny Rule 23 certification of the state law claims, arguing that no such predominate common issue exists. Defendants also seek a stay to discovery arguing "burden" "cost savings" and "efficiency," apparently unaware of the irony in their simultaneous decertification motions that would result in the unimaginably duplicative and grossly expensive proposition of litigating potentially over 1,000 identical cases separately in the same Court.

But if Defendants have shown any consistency, it has been in their desire that this case not move forward. This motion is the latest in that effort to do nothing, and it must be rejected. This case is now three years old, and although Defendants may not like their chances on summary judgment on their only exemption defense (particularly after their own Executive Vice President already admitted that Plaintiffs are hourly non-exempt overtime eligible employees), that does not provide them a basis for stopping the discovery Plaintiffs are in the process of obtaining that will cement the fact that Section 7(i) does not apply. Further, because no dispositive motion is currently pending with this Court, no matter what the Court does with Defendants' ill-timed decertification motion or anti-class certification motion, the discovery that Defendants seek to stop is entirely relevant and necessary, whether for a case of five named Plaintiffs, 1130 opt-in FLSA Plaintiffs, and/or a class of thousands of state law Plaintiffs.

In short, nothing is gained in delaying discovery, and the Court should allow Plaintiffs to finish what they have started in discovery and bring the dispositive motion that will put an end to Defendants' only legal exemption defense. Defendants' motion to stay should be denied.

## **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

**A.     Plaintiffs' Class and Collective Complaint and Conditional Class Certification**

This class and collective action consists of approximately 1130 current and former employees (5 Named and 1125 "opt-in" Plaintiffs) of Monro Muffler Brake, Inc. and Monro Service Corporation ("Defendants"), uniformly alleging that Plaintiffs were denied regular and overtime pay for hours worked off-the-clock based on Defendants' company-wide policies in violation of the FLSA and New York and Pennsylvania state labor laws.  (See Second Am. Compl.; Declaration of Rachhana T. Srey ¶ 3 ("Srey Decl.").)  Plaintiffs brought their state law claims as a class action pursuant to Fed. R. Civ. P. 23 and as a collective action pursuant to Section 216(b) of the FLSA.

On August 3, 2011, Plaintiffs moved for conditional class certification of the FLSA collective class, which Defendants opposed arguing that their assertion of the 7(i) exemption defense precluded a finding of Plaintiffs being "similarly situated" at the first notice stage.  (ECF Nos. 34 and 75 at 16.)  Specifically, Defendants contended that all of the technicians would qualify as 7(i) exempt, and that determining application of the exemption would require examining each individual technician's pay on a week-by-week basis, resulting in "mini trials" to determine whether the defense applies to each plaintiff.  (Id. at 17.)

On March 23, 2012, Magistrate Judge Payson granted Plaintiffs' motion for conditional certification and found that Plaintiffs had made a sufficient showing that they and the putative collective class members are "similarly situated" for purposes of collective-wide notice and discovery.  Magistrate Judge Payson also ruled that Defendants cannot defeat first stage certification by simply raising the issue of the 7(i) exemption defense because such arguments are premature and are more properly addressed after **extensive discovery**.  (ECF Nos. 73 (Order) and 75 (Transcript of Bench Decision) at 15-22.)  (emphasis added).

**B.     The Parties' Post-Notice Agreement to Conducted Discovery Focused on Defendants' Section 7(i) Exemption Defense**

After the close of the FLSA notice period, the parties participated in a status conference with the Court on January 8, 2013. (ECF No. 162.) Acknowledging that the 7(i) exemption defense was the central issue in the case, the parties agreed to conduct staged discovery, with the first stage being limited to the issue of whether the hourly plus plan was a bona-fide commission plan under 7(i). (ECF No. 163.) The parties also agreed that once 7(i) discovery was completed, both parties would file motions for summary judgment on the issue of whether the technician pay plan at issue in this case is a bona fide commission plan within the meaning of Section 7(i).[1] (Id.) Pursuant to the parties' agreement, Plaintiffs served their first set of document requests on January 21, 2013, and noticed the deposition of Defendants' Executive Vice President-Finance, Treasurer and Chief Financial Officer Catherine D'Amico. (Srey Decl. ¶ 4.) The parties' agreement to proceed with staged discovery eventually broke down, not because any party believed that 7(i) was no longer the common issue central to Plaintiffs' and the collective or class members' claims, or that any analysis of whether 7(i) applies would consist of an "individualized inquiry" or "mini-trials." Instead, the agreement fell apart because of disagreements on the proper scope of 7(i) discovery. (Srey Decl. ¶ 5.) The parties subsequently asked the Court to enter an order setting case deadlines, which the Court did on February 25, 2013. (ECF No. 165.)

**C.     Defendants Demand Discovery From 25% of the Opt-in Plaintiffs**

On February 20, 2013, Defendants served written discovery demands on 25% of the opt-in Plaintiffs, which they broke into two groups, Group A and B. (See Ex. A.) In total,

---

[1] All Plaintiffs are treated as non-exempt overtime eligible employees and paid under the same "hourly rate structure and additional compensation based on productivity" (hereinafter "hourly plus" plan). (D'Amico Dep. at 60-61; 180-88.)

3

Defendants served on Plaintiffs 17 Interrogatories and 18 Requests for Production of Documents to one group of 142 Plaintiffs ("Group A"), and 20 Interrogatories and 18 Requests for Production of Documents to another group of 146 plaintiffs ("Group B"). Defendants also noticed the Group A Plaintiffs for depositions, along with the 5 Named Plaintiffs, for a total of 147 requested depositions. (Id. ¶ 6.)

**D.   The Parties Reach an Agreement to Conduct Representative Discovery Limited to 10% of the Opt-in Plaintiffs**

Starting in February 25, 2013, to mid-June, the parties continued to meet and confer regarding Defendants' discovery demands and the appropriate size of the representative discovery pool. (Id. at ¶ 7.) Ultimately, the parties agreed to reduce the scope of the representative sample pool from 25% to 10% for written discovery (110 Opt-in Plaintiffs as well as the five Named Plaintiffs) and 5% for depositions. (Id.)[2]

**E.   The Parties' Mediation**

On March 4, 2013, Defendants responded to Plaintiffs first set of document request, producing no documents with its pleadings. (Id. ¶ 8, Ex. B.) Two days later, the parties agreed to explore settlement through mediation and informally stayed discovery to focus on getting ready for mediation. (Id. ¶ 9.) To prepare for mediation, Defendants produced to Plaintiffs' certain payroll data for most of the opt-in Plaintiffs for some of the time periods covering their federal and state statutory claims, and various corporate compensation and policy documents. (Id. ¶ 10.) Defendants failed to produce any payroll data for approximately 83 opt-in Plaintiffs and limited their production of payroll data that included Plaintiffs' hourly guarantee rate to time periods after August 15, 2009. (Id.; Ex. C.) Of the twelve electronic files Defendants produced,

---

[2] At the time Defendants filed the instant motion, the parties were on the eve of executing a representative discovery agreement regarding the sample size and methodology for selective the representative sample. (Id. ¶7.)

two were largely duplicative of two others because of data missing from the first two. (Srey Decl. ¶ 10.) Defendants have not since subsequently supplemented or completed their production of Plaintiffs' payroll data since this initial production for mediation. (Id.)

On April 23rd, the parties mediated the case, but did not reach a settlement. (Id. ¶ 11.)

**F.     The Parties' Post Mediation Discovery Efforts**

Shortly after mediation, Plaintiffs served Defendants with their second set of documents requests on May 10, 2013. (Id. ¶ 12.) Plaintiffs also served their written responses to Defendants' First Set of Interrogatories and Requests for Production of Documents for Representative Sample Groups A and B on May 23, 2013. (Id. ¶ 13.) Plaintiffs' responses were not individually tailored to any particular opt-in Plaintiff because at that time the parties had not yet agreed on which opt-in Plaintiffs would be included in the representative sample pool. (Id.) On June 10th, Plaintiffs provided Defendants with a draft of a representative discovery agreement, which the parties continued to negotiate the terms of up until Defendants filed the instant motion to stay. (Id. ¶ 14.) On June 14, 2013, Defendants provided incomplete responses to Plaintiffs' Requests for Production of Documents, Set II. (Id. ¶ 15; Ex. D.)

On June 20, 2013, Plaintiffs deposed Catherine D'Amico, Defendants' Executive Vice President-Finance, Treasurer and Chief Financial Officer. (Srey Decl. ¶ 16.)[3] During her deposition, Ms. D'Amico testified that: 1) technicians are non-exempt employees who are paid overtime; 2) Monro has not yet decided whether it is relying on the 7(i) exemption, but "probably" meets it; 3) describing the hourly plus plan as "an hourly pay structure and additional compensation based on productivity" is accurate and truthful; 4) technicians are supposed to be paid time and one-half their regular hourly rate for their overtime hours worked; 5) Monro's

---

[3] Cited pages to Ms. D'Amico's deposition transcript is attached to Srey Decl. as Exhibit E.

corporate policy documents repeatedly refer to technicians as hourly employees; and 6) Monro has already analyzed whether it 7(i)'s pay requirements. (D'Amico Dep. at 57, 60-69, 107, 180-188.) Ms. D'Amico also identified several additional witnesses and documents relevant to Plaintiffs' claims and Defendants' Section 7(i) defense. (Id. at 13, 78-79, 137-138, 160-162.)

On June 21, 2013, the parties filed cross motions to compel and for protective order. (ECF Nos. 171 and 172.) In particular, Plaintiffs moved for a protective order against Defendants' written discovery requests seeking Plaintiffs' tax returns, identity of Plaintiffs' financial institutions and records, credit cards and debit account information, information regarding plaintiffs' electronic storage and communication devices, and email and social media accounts. (ECF No. 172.)

**G.     Defendants File the Instant Motion Three Weeks After Ms. D'Amico's Deposition**

On July 12, 2013, approximately three weeks after Ms. D'Amico's concessions, Defendants filed three contemporaneous motions, seeking to: 1) decertify the conditionally certified FLSA collective class; 2) preemptively deny Rule 23 certification of Plaintiffs' New York and Pennsylvania state law claims; and 3) stay discovery while the first two motions are pending before this Court. (ECF Nos. 175, 176, and 177.)

**ARGUMENT**

**I.     DEFENDANTS MUST ESTABLISH "GOOD CAUSE" TO STAY DISCOVERY**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, "a court has discretion to stay discovery 'for good cause shown.'" Spencer Trask Software & Info. Servs. v. RPost Int'l, 206 F.R.D. 367, 368 (S.D.N.Y. 2002). As the party seeking a stay of discovery, Defendants "bear[] the burden of demonstrating good cause." Fantastic Graphics, Inc. v. Hutchinson, 2010 U.S. Dist. LEXIS 10609, at *7 (E.D.N.Y. Feb. 8, 2010); see also U.S. v. Talco Contractors, Inc., 153 F.R.D. 501, 514 (W.D.N.Y. 1994) (collecting Second Circuit cases).

6

Courts consider the following factors in determining whether the moving party has demonstrated that a stay of discovery is appropriate: "(1) whether the [moving party] has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." Fantastic Graphics, Inc., 2010 U.S. Dist. LEXIS 10609, at *8; see Justice v. King, 2011 U.S. Dist. LEXIS 40693 (W.D.N.Y. Mar. 24, 2011) (Payson, M.J.) ("In considering a motion for stay of discovery pending a dispositive motion, a court should consider the breadth of discovery sought and the burden of responding to it, as well as the strength of the underlying motion.") (citation omitted).  A court determining whether to grant a stay of discovery must look to the "particular circumstances and posture of each case." Hachette Distribution, Inc. v. Hudson County News Co., Inc., 136 F.R.D. 356, 358 (E.D.N.Y. 1991).

In any event, discovery should not be routinely stayed simply on the basis that a dispositive motion has been filed. Moran v. Flaherty, 1992 U.S. Dist. LEXIS 14568, at *3 (S.D.N.Y. Sept. 25, 1992) (citing In re Chase Manhattan Corp. Secur. Litig., 1991 U.S. Dist. LEXIS 6136, at *1 (S.D.N.Y. May 7, 1991)); see also Fantastic Graphics, Inc., 2010 U.S. Dist. LEXIS 10609, at *7-8 ("The mere filing of a dispositive motion does not warrant the issuance of a stay under Rule 26(c)."). And unlike here, discovery should be stayed "only when there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive." David Tunick, Inc., v. Kornfeld, 1993 WL 6211, at *1 (S.D.N.Y. Jan. 6, 1993) (citing Hachette, 135 F.R.D. at 358).

## II.     DEFENDANTS HAVE FAILED TO ESTABLISH GOOD CAUSE FOR A STAY

### A.     Defendants' Pending Motions Do Not Dispose of Plaintiffs' Claims on the Merits

Defendants' motion to stay discovery is not based on a motion to dismiss the merits of Plaintiffs' overtime claims. Defendants instead based their stay request on their pending motion for decertification of Plaintiffs' conditionally certified class and motion to deny Rule 23 class certification. First, both of these motions will be denied, and therefore should not be used as the bases for foreclosing additional discovery in this case.[4] Second, neither of these motions is dispositive of Plaintiffs' claims on the merits, and for this reason alone, discovery should not be stayed in this case.[5]

To explain, in the remote chance this case were actually decertified or class certification not granted, this case would still consist of five Plaintiffs, whose overtime claims would still

---

[4] For all of the reasons why these pending motions lack merit, see Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Rule 23 Class Certification and Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Decertify Plaintiffs' Conditionally Certified Class. (ECF Nos. 182-1 and 184.)

[5] For this reason, the cases Defendants rely on are inapplicable because they all involve motions to stay premised on pending motions to dismiss or motions for summary judgment. See, e.g., Thomas v. N.Y.C. Dep't. of Educ., 2010 U.S. Dist. LEXIS 95798 (E.D.N.Y. 2010), Picture Patents, LLC v. Terra Holdings LLC, 2008 U.S. Dist. LEXIS 98030 (S.D.N.Y. 2008), Hachette Distrib., Inc. v. Hudson County News Co., 136 F.R.D. 356, 358 (E.D.N.Y. 1991), Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 2006 U.S. Dist. LEXIS 94944 (E.D.N.Y. 2006), Justice v. King, 2011 U.S. Dist. LEXIS 40693 (W.D.N.Y. 2011) (Payson, M.J.), Chesney v. Valley Stream Union Free Sch. Dist. No. 24, 236 F.R.D. 113 (E.D.N.Y. 2006), Dabney v. Maddock, 2011 U.S. Dist. LEXIS 153935 (N.D.N.Y. Nov. 29, 2011), ITT Corp. & Goulds Pumps, Inc. v. Travelers Cas. & Sur. Co., 2012 U.S. Dist. LEXIS 100033 (D. Conn. 2012), Johnson v. New York Univ. School of Educ., 205 F.R.D. 433, 434 (S.D.N.Y. 2002), Gandler v. Nazarov, 1994 U.S. Dist. LEXIS 17885, at *12 (S.D.N.Y. 1994), Mitchell v. New York State Dep't of Corr. Servs., 2012 U.S. Dist. LEXIS 126078 (W.D.N.Y. 2012) (Payson, M.J.), and Anti-Monopoly v. Hasbro, Inc., 1996 U.S. Dist. LEXIS 2684 (S.D.N.Y. 1996). Even the Hinterberger v. Catholic Health Sys., Inc., 08-cv-380-WMS(F), ECF No. 437 (W.D.N.Y. Jan. 28, 2013) (Foschio, J.) case, is distinguishable for this same reason. There, in addition to a pending decertification motion, a motion for summary judgment, which would have been dispositive of two of the plaintiffs' state law claims (ECF No. 177-2, Exhibit C at 21), was also pending at the time the plaintiffs filed an unopposed request to stay discovery.

need to be decided on the merits by this Court. See Bifulco v. Mortgage Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009) (noting that at the decertification stage, "the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff. If the court determines at that time that the members are not similarly situated under the law, then the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims.") (internal citation and quotation marks omitted). Importantly, because Defendants have asserted the same Section 7(i) exemption defense against each Plaintiff's claims, this Court would still need to resolve the 7(i) issue as to these five Plaintiffs. Thus, any discovery the parties conduct now with respect to the Section 7(i) issue is not only relevant, but is necessary for this Court to resolve this legal issue on summary judgment regardless of the outcome of Defendants' pending motions. The fact that this Section 7(i) discovery is also relevant to each collective and class member's claim does not mean that discovery should be stayed pending the resolution of the decertification and anti-certification motions. To the contrary, as discussed in detail in Plaintiffs' Memorandum of Law in Support of Class Certification (ECF No. 182-1) and Memorandum in Opposition to Decertification (ECF No. 184), all it means is that decertification is unwarranted and class certification justified because the 7(i) issue is susceptible to generalized collective-wide and class-wide proof.

As for the 1125 opt-in Plaintiffs, their claims would not simply disappear into the ether if this collective action were decertified, but instead, their claims would be dismissed *without prejudice*, and their statute of limitations tolled for a certain time period in order for them to have sufficient time to re-file their claims in a separate action. Bifulco, 262 F.R.D. at 212; Smith v. Heartland Automotive Servs., 404 F. Supp. 2d 1144, 1155 (D. Minn. 2005) (staying order

granting motion to decertify for 60 days to permit opt-in plaintiffs to re-file their individual claims).[6] Therefore, *assuming arguendo*, that the FLSA collective were actually decertified, whatever representative generalized 7(i) discovery the parties conduct now would also be relevant to the same issue in subsequent re-filed proceedings. The parties could save significant time and resources by conducting the discovery now, and not duplicating their discovery efforts later 1,125 times over again.

Because the linchpin of each Plaintiff's overtime claim is the same—Section 7(i)—regardless of whether this case consists of five Named Plaintiffs, 1130 Opt-in Plaintiffs, or thousands of putative class members, staying discovery is inefficient and achieves nothing.

### B. Plaintiffs Will Be Unfairly Prejudiced if Discovery is Stayed

Defendants' motion also claims that Plaintiffs will not be prejudiced by a stay, but will instead actually benefit from one because they will not "wast[e] tremendous time, money, and resources on discovery and discovery-related disputes which may become irrelevant." While Defendants' concern about Plaintiffs' best interests is touching, bringing Plaintiffs' discovery efforts to a screeching halt will be unfairly prejudicial to them. As one court put it, "[t]he plaintiffs . . . have clearly demonstrated that they would be prejudiced by a stay of discovery, since that would effectively block them from obtaining any discovery from any of the defendants, and non-parties as well, and thus bring the progress of the entire case to a halt merely because this defendant has made a motion of unknown merit." Allstate Ins. Co. v. Levy, 2011 WL 288511, at *1 (E.D.N.Y. Jan. 27, 2011).

As Defendants are well aware, at the time Defendants filed their motion, Plaintiffs were in the middle of collecting discovery to file a motion for summary judgment on Defendants'

---

[6] Here, because Monro Muffler is headquartered in Rochester, New York; all opt-ins claims would properly be re-filed as related, individual actions in this same Court. See 28 U.S.C § 1391(b)(1).

Section 7(i) defense for all Plaintiffs. Indeed, just three weeks before Defendants' motions, Plaintiffs had just finished deposing Defendants' Executive Vice President-Finance, Treasurer and Chief Financial Officer who testified that Plaintiffs were hourly employees (a concession fatal to Defendants' 7(i) defense) and that the 7(i) exemption was never contemplated by Defendants prior to litigation. Specifically, Ms. D'Amico testified: 1) technicians are non-exempt employees who are paid overtime; 2) Defendants have not yet decided whether it is relying on the 7(i) exemption, but "probably" meets it; 3) describing the hourly plus plan as "an hourly pay structure and additional compensation based on productivity" is accurate and truthful; 4) technicians are supposed to be paid time and one-half their regular hourly rate for their overtime hours worked; 5) Defendants' corporate policy documents repeatedly refer to technicians as hourly employees; and 6) Defendants have already analyzed whether it 7(i)'s pay requirements. (D'Amico Dep. at 57, 60-69, 107, 180-188.)

During her June 20th deposition, because of her lack of knowledge on certain things, Ms. D'Amico also identified several corporate witnesses that could provide testimony relevant to the 7(i) issue. For example, Ms. D'Amico identified Edward Mullin, Defendants' former Vice President of Human Resources and current Vice President of Employee Relations as someone who could testify about Defendants' timekeeping policies applicable to hourly employees like Plaintiffs, and Carloyn Kester or Nicole Francowiak, two payroll supervisors who could testify about Defendants' computerized payroll records, and Robert Gross, Defendants' Chief Executive Officer, who could testify about the technician pay plan that started when he began to run the company. (Id. at 13, 78-79, 137-138, 160-162.)

At the time Defendants filed the instant motion, Plaintiffs had intended to notice these individuals, as well as others, for a deposition. (Srey Decl. ¶ 17.) Plaintiffs were also preparing

to serve another set of document requests for documents specifically identified by Ms. D'Amico. (Id.) Finally, Plaintiffs also intended to follow up on other outstanding discovery, including Defendants' payroll production, which limited Plaintiffs' hourly guarantee rate data to time periods after August 15, 2009, although their New York claims date back to September 2004 and omitted 83 Plaintiffs.[7]  (Id. ¶ 18.)

In sum, Plaintiffs would certainly be prejudiced if forced to wait out a stay of discovery based on a non-dispositive motion with little chance of success, when they could be gathering the discovery necessary to file their summary judgment motion on Defendants' Section 7(i) exemption defense as to all of Plaintiffs' claims. A stay should be denied because the inapplicability of Defendants' Section 7(i) exemption defense will be determined by this Court based on all of the "facts and circumstances," of Plaintiffs' employment, and Plaintiffs should be able to continue to discover these facts and circumstances efficiently and expeditiously now. See 29 C.F.R. § 779.416(a).[8]

---

[7] Defendants' other argument that Plaintiffs suffer no prejudice by a stay because of the "overwhelming discovery" Defendants have already produced should also be rejected. Defendants' statement that they have produced "payroll and time entry data for every opt-in plaintiff dating back to September, 2004," is simply untrue. (See *supra*, Section E; Srey Decl. ¶ 10.) Further, at the time the instant motions were filed, Plaintiffs also intended to meet and confer with Defendants regarding their incomplete responses to Plaintiffs' other written discovery requests. (Srey Decl. ¶ 19.)

[8] Section 779.416(a) address pay plans like the technician's hourly plus plan and provides:

> A determination of whether or to what extent such periodic payments can be considered to represent commissions may be required in those situations where the employment arrangement is that the employee will be paid the stipulated sum, or the commission earnings allocable to the same period, whichever is the greater amount. The stipulated sum can never represent commissions, of course, if it is actually paid as a salary. If, however, it appears from all the facts and circumstances of the employment that the stipulated sum is not so paid and that it actually functions as an integral part of a true commission basis of payment, then such compensation may qualify as compensation which "represents commissions

**C.     Defendants' Complaints About Being Burdened by Discovery Ring Hollow**

Defendants' complaints about the costs and burdens associated with responding to class-wide discovery ring hollow, and should be rejected for several reasons. First and foremost, as discussed herein, because much of the discovery Plaintiffs seek is generalized, classwide proof relevant to the issue of whether Defendants can meet their burden to prove that Section 7(i) applies, it would have to be produced regardless of Defendants' motions. Second, Defendants' complaints about costs and burdens they will face with conducting and responding to discovery for a sample group of 110 Plaintiffs in this case is completely at odds with their decertification strategy. Indeed, Defendants' decertification motion seeks to split the Plaintiffs' claims apart into over 1100 individual files and to conduct discovery individually on each Plaintiffs' claims despite Section 7(i) being the predominate issue common to all Plaintiffs claims. In other words, Defendants' decertification strategy achieves the precise opposite of the fundamental purpose of a collective action, which was designed to allow for lower costs and efficient resolution. See Hoffmann-LaRoche, Inc. v Sperling, 493 U.S. 165, 170 (1989).

Third, Defendants' complaints about conducting and responding to discovery for 110 Plaintiffs is particularly disingenuous considering Defendants initially wanted the sample group to consist of 25% of the 1130 Opt-in Plaintiffs. (See Ex. A.) The only reason the discovery sample was reduced to 10% is because Plaintiffs refused to conduct discovery on such a large sample group in light of the FLSA's broad remedial purpose and the associated costs and

---

on goods or services" within the meaning of clause (2) of the section 7(i) exemption.

See 29 C.F.R. 779.416(a); see also Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 327-28 (S.D.N.Y. 2010) ("the United States Department of Labor has provided some guideposts for analyzing compensation plans in which the 'employee will be paid [a guaranteed] stipulated sum, or the commission earnings allocable to the same period, whichever is the greater amount.' 29 C.F.R. § 779.416(a)").

burdens.[9] Fourth, because Defendants filed their motion well before discovery has been completed, inconsistent with the law of the case and the second stage decertification factors, Plaintiffs should be permitted to conduct discovery to show that they are "similarly situated" based on an analysis of *all three* decertification factors, and not just one. (see ECF No. 184.)

Finally, there is no Court order requiring Defendants to conduct any discovery of Plaintiffs. In fact, if Defendants do not wish to incur "significant financial costs in conducting sample-group depositions," then they shouldn't take any Plaintiffs' depositions. Defendants, however, must still respond to Plaintiffs' requests and in particular produce the corporate and management witnesses and documents that are classwide and not specific to any individual Plaintiffs.

### D. Additional Factors Weigh Against Staying Discovery

Other factors "[c]ourts also may take into consideration [include] the nature and complexity of the action, whether some or all of the defendants have joined in the request for a stay, the type of motion and whether it is a challenge as a matter of law or to the sufficiency of the allegations, and the posture or stage of the litigation." Alford v. City of New York, 2012 WL 947498, at *1 (E.D.N.Y. Mar. 20, 2012); see Telesca, 2006 WL 1120636, at *1; Hachette, 136 F.R.D. at 358. Furthermore, "[t]he fact that plaintiff is pursuing discovery expeditiously also weighs against delaying discovery by granting a stay." Freund v. Weinstein, 2009 WL 2045530, at *3 (E.D.N.Y. July 8, 2009); see Hachette, 136 F.R.D. at 359. In addition to the reasons discussed above, other factors such as the age of the case, Plaintiffs' diligent discovery efforts post-notice, and judicial economy and efficiency weigh against a stay.

---

[9] See Craig v. Rite Aid Corp., 2011 U.S. Dist. LEXIS 13843, at *15 (M.D. Pa. Feb. 7, 2011) (rejecting the defendants' request for collective-wide written discovery and depositions of 180 out of 1073 plaintiffs, finding that "to require the parties to undertake Defendants' proposed discovery plan would serve to undermine one of the central purposes of conditional certification of collective actions, namely efficient resolution of this litigation").

14

This case has already dragged on for nearly three years, and discovery finally began in earnest at the beginning of this year after the FLSA notice period ended.  On January 21, 2013, after the parties reached an agreement to conduct staged discovery focused on the 7(i) exemption, Plaintiffs immediately served their first set of document requests and noticed Ms. D'Amico for a deposition.   (Srey Decl. ¶ 4.)  Even without discovery being stayed, Defendants were unable to produce Ms. D'Amico for her deposition until June 20, 2013.  (Id. ¶ 13.)  Staying discovery would only result in further delay.

Moreover, contrary to Defendants' suggestion otherwise, this Court would not benefit from a stay because the discovery dispute (ECF Nos. 171 and 172) pending before Your Honor will exist regardless of whether the case is decertified.  Defendants have not withdrawn their requests for tax returns, private financial records, credit card and debit card account information, and email and social media accounts.  The Court will need to rule on whether Plaintiffs should be required to produce this information irrespective of whether this case consists of five Plaintiffs or 1130 Plaintiffs.   Judicial economy is just not served by a stay.

## CONCLUSION

For all of the reasons stated above, Defendants' motion to stay discovery should be denied.

Dated: August 27, 2013

NICHOLS KASTER, PLLP

By: s/Rachhana T. Srey
Paul J. Lukas, MN Bar #22084X
Rachhana T. Srey, MN Bar #340133
NICHOLS KASTER, PLLP
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Fax: 612-215-6870

&

                    Brian M. Zorn
                    Kathryn K. Lee
                    Nicholas J. Pontzer
                    FARACI LANGE, LLP
                    28 East Main Street, Suite 1100
                    Rochester, New York 14614
                    Telephone: (585) 325-5150

                    **ATTORNEYS FOR PLAINTIFFS**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN ELLERSICK, DAVID ELLERSICK, LEWIS C.
YOUNGS, JR., RICHARD CURRY, JR., AND RICHARD
H. TEMPLE, on Behalf of Themselves and all Others
Similarly Situated,

                            Plaintiffs,                    10-CV-6525(G)(P)

   -vs-

MONRO MUFFLER BRAKE, INC. and
MONRO SERVICE CORPORATION,

                            Defendants.
_____

## CERTIFICATE OF SERVICE
_____

      I, Rachhana T. Srey, Esq., hereby certify that on August 27, 2013, I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

    Brian M. Zorn        bzorn@faraci.com, kfallon@faraci.com;

    Joseph A. Carello     jcarello@nixonpeabody.com;

    Kathryn K. Lee       klee@faraci.com, dhardman@faraci.com;

    Nicholas J. Pontzer   npontzer@faraci.com;

    Paul J. Lukas         lukas@nka.com, assistant@nka.com;

    Stephen J. Jones     sjones@nixonpeabody.com; and

    Todd R. Shinaman   tshinaman@nixonpeabody.com.


Dated: August 27, 2013                                s/Rachhana T. Srey, Esq.
                                                              Rachhana T. Srey, Esq.
                                                               Attorney for Plaintiffs