UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN ELLERSICK,
DAVID ELLERSICK,
LEWIS C. YOUNGS, JR.,                                    Case # 10-CV-6525-FPG-MWP
RICHARD CURRY, JR., and
RICHARD H. TEMPLE,                                       DECISION AND ORDER
ON BEHALF OF THEMSELVES AND ALL
OTHER EMPLOYEES SIMILARLY
SITUATED,

                                    Plaintiffs,
v.

MONRO MUFFLER BRAKE, INC. and
MONRO SERVICE CORPORATION,

                                    Defendants.
_____

## INTRODUCTION

Plaintiffs, who are all former mechanics and technicians of Monro Muffler Brake, Inc. and/or Monro Service Corporation (collectively "Monro") bring this collective and class action lawsuit seeking unpaid wages and overtime pay under the Fair Labor Standards Act ("FLSA") and under New York and Pennsylvania state labor laws.

There are five motions currently pending before the Court: (1) Defendants' Motion to Decertify the Conditionally Certified Collective Action (ECF No. 175); (2) Defendants' Motion to Deny Class Certification (ECF No. 176); (3) Plaintiffs' Motion for Class Certification (ECF No. 182); (4) Plaintiffs' Motion for Partial Summary Judgment (ECF No. 210); and (5) Defendants' Motion for Partial Summary Judgment (ECF No. 218).

The Court has received extensive briefing on these motions, and deems oral argument unnecessary. For the following reasons, Defendants' Motions to Decertify and Deny Class Certification (ECF Nos. 175, 176) are GRANTED; Plaintiffs' Motion for Class Certification

(ECF No. 182) is DENIED, and the parties' respective partial summary judgment motions (ECF Nos. 210, 218) are both DENIED WITHOUT PREJUDICE.

## BACKGROUND

This Fair Labor Standards Act ("FLSA") collective action was conditionally certified as an opt-in class action case by United States Magistrate Judge Marian W. Payson on April 5, 2012. Specifically, Magistrate Judge Payson conditionally certified a class of current and former technicians and Assistant Store Managers (ASM's) from Monro, for the 3 years prior to the March 23, 2012 conditional certification Order, and who worked in Monro's stores. Approximately 8,277 people were sent notice of this opt-in action, of whom, approximately 1,125 opted-in to this action.

In support of the present motions, Defendants have submitted the declaration of Catherine D'Amico, who is the Executive Vice President-Finance, Treasurer and Chief Financial Officer for Monro, and has been with Monro for approximately 20 years. ECF No. 175-2. Both parties rely heavily on Ms. D'Amico's declaration and her deposition testimony, which the Court will use here to summarize the salient background information[1].

Monro has approximately 539 stores that operate in 15 states. Each of these stores typically have a Store Manager, an Assistant Store Manager, and 3 to 6 Technicians.

According to Mr. D'Amico, Monro's technicians are compensated primarily by commission, or what Monro calls "incentive." These commission rates are typically 10-12% of the total invoice for the technicians work for the week.

---

[1] Plaintiffs argue that the present motions from Defendants to decertify and deny class certification are premature, since discovery has not been completed. The Court rejects this argument. First, the record makes clear (as demonstrated by the parties lengthy briefing on these motions) that significant data has been exchanged; second, the Defendants do not point to specific items they are missing that would affect the current motions (even if data for 83 of the 1,125 opt-in Plaintiffs is missing, that does not alter the Court's conclusion); and third, despite claiming a lack of discovery, Plaintiffs nonetheless had sufficient discovery to be able to advance their own certification motion.

In addition, each technician has what Monro calls a "guarantee rate." Each employee has their own guarantee rate; some fluctuate based on a 12-month rolling period that is based on productivity (essentially calculated by dividing commissions by hours worked), while others have a fixed guarantee rate.

If a technician's commissions for the week does not exceed the amount of their hours worked multiplied by their guarantee rate, the technician receives what Monro terms a "subsidy" to make up the difference. Let's say for example that a technician earned $330 in commissions in a given week. For that same week, if that technician's guarantee rate is $10 per hour and he or she worked 38 hours, Monro would pay that technician (in addition to their earned $330 in commissions) a subsidy of $50, for a total weekly gross pay of $380.

According to Ms. D'Amico, Monro's expectation is that technicians will be paid primarily on commission. She states that technicians who receive excessive subsidies are subject to disciplinary action, up to and including termination. To that end, Monro manages against the payments of subsidies. Exactly how much in subsidy payments will be tolerated varies, based on a variety of factors including the individual manager's tolerance level, local market conditions, seasonal fluctuations in store volume, and whether that particular store is open on Sunday, since Monro staffs the store with at least 2 people for safety, but Sunday is typically a low volume sales day. The personnel decisions regarding how much subsidy is tolerated and any resulting disciplinary actions is ultimately made by the field level managers in consultation with Monro's Human Resources division.

Ms. D'Amico relays that "operationally, Monro treats technicians as 'hourly' in that their hours are recorded and they are paid overtime. However, technicians are expected to be compensated exclusively (or at least primarily) based on commission/incentive; the guarantee

rate is merely a method of setting a floor on technician earnings which is expected to be the exception, not the rule."

For those technicians with fluctuating guarantee rates, they are recalculated every month, and the rates are based on that technician's previous 12-month productivity. In addition, all technicians, whether assigned a fluctuating guarantee rate of or non-fluctuating guarantee rate, are also assigned a grade (also known as a level) which has an associated commission percentage rate, as well as minimum and maximum guarantee rates.

Further, Monro's ASM's are technicians who act as the Store Manager only in the absence of the Store Manager. If the Store Manager and the ASM are working at the same time, the ASM works, and is paid, as a technician. On days when the Store Manager is not working, the ASM acts as the Store Manager, and earns what Monro terms "run shop" pay at an hourly rate, but also works as a technician as needed. The ASM continues to earn commissions (incentive) on work he or she performs under the technician pay plan, but then splits these commissions 50%-50% with the store.

For a week where someone works as both a technician and an ASM, and the technician commissions do not exceed the guarantee rate multiplied by the hours worked as a technician, the employee receives a subsidy to make up the difference.

According to Ms. D'Amico, in weeks when technicians and ASM's work more than 40 hours in a week, they are paid overtime.

As part of the discovery provided in this case, Monro provided payroll data from September 2004 through approximately July 2013 for the named and the opt-in Plaintiffs.

According to a declaration (ECF No. 175-4) submitted by William Masterson, an e-discovery specialist employed by Defendants' counsel, his analysis of Monro's payroll records

provided in this case reveals that the opt-in Plaintiffs earned a subsidy in 44% of weeks since 2004. His analysis determined that the top 10% longest tenured opt-in Plaintiff's earned subsidy in 31% of the weeks since 2004, while the bottom 10% shortest tenured opt-in Plaintiff's earned subsidy in 83% of weeks. Overall, 25% of the opt-in Plaintiff's are responsible for 62% of the weeks in which subsidy was paid by Monro.

Further, Defendants provided a chart of payroll numbers for 12 weeks in which the first named Plaintiff, John Ellersick, worked between 38 and 40 hours in a week. Those 12 weeks, which were between 2/23/08 and 11/14/09, reveal that John Ellersick's pay fluctuated between $386.90 and $680.93. See ECF No. 175-5.

Plaintiffs have also put before the Court their own data analysis, *see* ECF No. 211, Exh's 14-18, in which they have calculated Plaintiffs' commission rate "as a collective group."

## DISCUSSION

I. Class Certification

Defendants have moved to decertify the conditionally certified class and to deny class certification, arguing primarily that individual determinations will consume this case and predominate over issues that could be determined on a classwide basis. On the opposite side of the coin, Plaintiffs seek certification of only the liability issue under the §7(i) exemption, or in other words, a classwide determination that Monro cannot satisfy the exemption.

a. General Class Action Principles

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki,* 442 U.S. 682, 700–01 (1979). "The party seeking class certification bears the burden of establishing by a

5

preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir. 2009). Indeed, a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161 (1982). "A district judge must assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." *In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d 24, 42 (2d Cir. 2006). The Rule 23 inquiry may overlap with the merits of the underlying claims. *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351 (2011). When this occurs, courts are to consider the merits questions only to the extent "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* ––– U.S. ––––, 133 S. Ct. 1184, 1195 (2013).

A district court's class certification ruling is reviewed under the highly deferential abuse of discretion standard, meaning the court "'is empowered to make a decision—of its choosing—that falls within a range of permissible decisions,' and [a reviewing court] will only find 'abuse' when the district court's decision 'rests on an error of law ... or a clearly erroneous factual finding, or ... its decision ... cannot be located within the range of permissible decisions.'" *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir. 2010) (internal citations omitted).

Rule 23(a) sets out four threshold requirements for certification, and to maintain a class action, all four of these requirements must be met:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The "failure to meet any one of Rule 23's requirements destroys the alleged class action." *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69-70 (E.D.N.Y. 2000). With regard to the so-called commonality requirement of Rule 23(a)(2), the Supreme Court has observed this language is easy to misunderstand since:

> [a]ny competently crafted class complaint literally raises common "questions." ... What matters to class certification ... is not the raising of common "questions"— even in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Dukes,* 564 U.S. at 349.

If Plaintiffs demonstrate by a preponderance of the evidence that the proposed class meets these standards, the Court then must determine whether the action satisfies one of the criteria of Rule 23(b). Under Rule 23(b), a party may only maintain a class action by demonstrating that: (1) bringing the claims as separate actions would create a risk of inconsistent or adverse adjudications; (2) the party opposing the class has acted or refused to act on grounds that apply to the class in general, making injunctive or declaratory relief appropriate for the class as a whole, or (3) that common questions of fact or law predominate over any individual questions and that a class action is a superior method of efficiently and fairly adjudicating the matter.

While the parties disagree on whether the Rule 23(a) factors have all been satisfied, their primary disagreement is whether Plaintiffs can satisfy the more stringent requirements of Rule 23(b), and in particular, Rule 23(b)(3). As such, the Court will assume without deciding that Plaintiffs can satisfy the less demanding strictures of Rule 23(a), and focus on the latter analysis.

Rule 23(b)(3) requires the party seeking certification to show that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment would be superior to individual litigation. Fed. R. Civ. P. 23(b)(3). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010)(citations omitted). The requirement's purpose is to "ensure[ ] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Id. Therefore the requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a). Rule 23(b)(3), as an adventuresome innovation, is designed for situations in which class-action treatment is not as clearly called for." *Comcast Corp. v. Behrend,* ⸺ U.S. ⸺, 133 S.Ct. 1426, 1432 (2013) (citations and quotation marks omitted).

b. <u>Analysis</u>

The parties do agree on one matter in this case: that the FLSA's §7(i) exemption[2] is the key issue before the Court. Indeed, the §7(i) exemption is characterized by the parties as the lynchpin to this case, and to the parties' respective certification motions. Plaintiffs assert that the applicability of the §7(i) exemption can be determined on a class-wide basis, and Defendants

---

[2] Although this case also involves claims under New York and Pennsylvania state labor laws, their exemptions either incorporate or are identical to the FLSA's retail sales exemption under 28 U.S.C. § 207(i). *See* 12 NYCRR § 142-2.2 and 34 Pa. Code § 231.43(f). As such, similar to the parties approach in their briefing, the Court will refer to the issue collectively as the "§7(i)" exemption throughout this decision.

8

argue that the §7(i) exemption requires highly individualized determinations, and thus calls for decertification.

The relevant portion of §7(i), entitled "employment by retail of service establishment," provides as follows:

> No employer shall be deemed to have violated [the overtime provisions of the FLSA] by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under [the minimum wage section of the FLSA], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i)

For Defendants to ultimately succeed on their claimed §7(i) exemption, they will have to establish that for each representative work period at issue, each employee received more than half of his compensation from commissions. In order to make this determination, an inquiry into "the hours worked and the compensation earned by ... [the] employees on a weekly basis" is required. 29 C.F.R. § 778.104. Because of this, Defendants argue that evidence regarding the hours worked by each technician will be highly individualized and is not subject to common proof, and the §7(i) exemption cannot therefore be collectively adjudicated. The Court agrees.

In *Johnson v. TGF Precision Haircutters, Inc.*, No. No. CIV.A. H-03-3641, 2005 WL 1994286 (S.D. Tex. Aug. 17, 2005), the parties differed as to whether the §7(i) exemption was, as the Plaintiffs argued (much as the Plaintiffs argue in this case), "simply a generalized, classwide defense" that would not weigh against class certification; or, as the Defendants argued

9

(again, much as Defendants in this case argue), that the opposite is true, and that the defense is highly individualized, thus counseling against class certification. The district court held that:

> Functionally, however, § 7(i) is in fact a highly individualized defense because its application requires week-by-week and other periodic calculations (e.g., not less than monthly on one part of the formula) specific to each individual Plaintiff and his or her particular circumstances. The "regular rate" of pay, for example, "is a rate per hour, computed for the particular workweek by a mathematical computation in which hours worked are divided into straight time earnings for such hours to obtain the statutory regular rate." 29 C.F.R. § 779.419; *see Schwind v. EW & Assocs., Inc.*, 371 F. Supp. 2d 560, 567 (S.D.N.Y.2005). With respect to commissions, § 7(i) also requires the totaling of each particular Plaintiff's commissions over a "representative period" of not less than one month. *See* 29 U.S.C. § 207(i). This "representative period" is meant to be "a period which typifies the total characteristics of an employee's earning pattern in his current employment situation, with respect to the fluctuations of the proportion of his commission earnings to his total compensation." 29 C.F.R. § 779.417. The proof required to establish these individualized § 7(i) exemption defenses would become the overwhelming focus of a trial which, to a jury or factfinder, would amount to trials of perhaps as many as 200 individual cases. Thus, the § 7(i) exemption defense weighs heavily in favor of decertification. *Cf. Basco*, 2004 WL 1497709, at *8 ("Wal-Mart's potential defenses to any alleged FLSA overtime violations will require highly individualized evidence concerning each associate."); Wynn v. National Broadcasting Co., Inc., 234 F. Supp. 2d 1067, 1085 (C. D. Cal.2002) (declining to certify class where, *inter alia*, individualized issues, including individualized defenses, would predominate); *Morisky v. Public Serv. Elec. and Gas Co.*, 111 F. Supp. 2d 493, 499 (D. N.J. 2000) (finding that an exemption inquiry was "extremely individual and fact intensive," and deciding that "the individual nature of the inquiry required make[s] collective treatment improper in this case"); *Brooks v. BellSouth Telecomms., Inc.*, 164 F.R.D. 561, 569 (N.D. Ala. 1995) (explaining that circumstances of employment termination were diverse and that "the court, if plaintiff's suggested class were certified, would be faced with numerous individualized defenses").

*Johnson*, 2005 WL 1994286, at *6. (footnotes omitted).

In another similar and persuasive case, the district court in *Beauperthuy v. 24 Hour Fitness USA, Inc.,* 772 F. Supp. 2d 1111 (N.D. Cal. 2011) found that:

> determining whether the § 7(i) defense applies to members of the putative class would require a highly individualized inquiry and could not be accomplished by common proof. The FLSA regulations make clear that the analysis must be performed for each individual employee on a week-by-week basis. 29 C.F.R. § 778.104. Adding to the complexity in this case is the fact that trainers received various wages and various commissions depending on factors such as their

> experience level, certifications, and the time period during which they worked. Accordingly, "[t]he proof required to establish these individualized § 7(i) exemption defenses would become the overwhelming focus of a trial," resulting in the equivalent of mini-trials for each Plaintiff. *Johnson,* at *6.
>
> Plaintiffs contend that the payments Defendants refer to as commissions were not in fact *bona fide* commissions under § 7(i), and that the § 7(i) defense could be defeated via common proof of this fact. Pl.'s First Opp'n at 19. This argument is unavailing. The argument is premature at this stage of the case; whether plaintiffs actually meet the criteria of an FLSA exemption is irrelevant to a determination of whether they are similarly situated. *Pfohl v. Farmers Ins. Group,* 2004 U.S. Dist. LEXIS 6447 at *27 n. 5 (C.D. Cal. Mar. 1, 2004); *Pendlebury v. Starbucks,* 518 F. Supp. 2d 1345, 1353 (S.D. Fla.2007) (noting, "an evaluation on the merits of the exemption is not appropriate at [the decertification stage]").

*Beauperthuy,* 772 F. Supp. 2d at 1126–27.

As Plaintiffs here recognize, "this case hinges on whether Plaintiffs and putative class members are 7(i) exempt." ECF No. 182-1, at 26. And while they argue that "[t]his common issue predominates over individual issues, and whether Plaintiffs were paid bona fide commissions may be adjudicated based on generalized classwide proof," *id.*, the Court cannot agree. As *Johnson* and *Beauperthuy* both make clear, the application of the § 7(i) requires individual calculations for various time periods, and these calculations must be specific to each individual Plaintiff and their individual circumstances. Indeed, the applicable FLSA regulations make as much clear (*See*, e.g., 29 CFR § 778.104, entitled "each workweek stands alone") and dictate that the analysis must be performed for each individual employee on a week-by-week basis. Further, these calculations must also take into account the unique situations to each of the Monro employees – including, just as one example, whether they were working as an ASM earning 'run shop' pay for that day, or whether they were working as a technician, and what, if any, commissions or subsidy was earned for each particular week – not to mention that individual Plaintiffs claim that they have regularly worked hours off the clock and were not paid,

11

which would complicate any overtime pay analysis, and further demonstrates that individual proof will dominate over matters that can be proven on a class-wide basis.

After careful consideration, the Court finds the principles of the *Johnson* and *Beauperthuy* decisions persuasive, and finds that a determination of the § 7(i) defense in this case will require an analysis of each employee's pay to determine at least: (1) whether they were paid a bona fide commission and (2) an analysis of each employee's pay to determine whether, for each representative period, that employee was paid primarily on commission, keeping in mind that in any week where the employee was not paid primarily on commission, the § 7(i) exemption would only be inapplicable for that week.  *See* 29 C.F.R. §779.419.

Because this week-by-week and employee-by-employee determination is highly individualized, the Court finds that the highly individualized nature of the § 7(i) defense for the over 1,100 Plaintiffs, with the multiple layers of determinations to be made as to each of those Plaintiffs, leads to the inescapable conclusion that these individualized determinations would predominate over the entire case.  Indeed, they would make this case unmanageable and chaotic, and therefore both the procedural considerations and fairness considerations weigh conclusively in favor of decertification. This case will therefore be decertified as a class action, and the opt-in Plaintiffs will be dismissed without prejudice.   In light of this determination, Plaintiffs certification motion is denied for these same reasons.

    II.    <u>Summary Judgment</u>

Although the parties have both moved for partial summary judgment, their respective applications heavily rely on the applicability of the § 7(i) exemption, and were made without the benefit of the Court's decertification decision.  Given that the class certification issue has now been resolved, and given that the decertification determination drastically changes the landscape

of this case by reducing it from over 1,100 plaintiffs down to the 5 named Plaintiffs, the Court will deny both of the parties' summary judgment motions without prejudice. If either party wishes to file a renewed summary judgment motion limited to the 5 named Plaintiffs, they shall propose a date for the filing of such motion and notify the Court by letter. If any such letter is received, the Court will set a briefing schedule for any renewed summary judgment motions.

In addition, the parties are encouraged to discuss between themselves whether renewed mediation of this matter would now be appropriate, either through the district's Alternative Dispute Resolution program, or through a judicially mediated settlement conference. The Court is ready and willing to conduct a settlement conference with the parties if they desire the Court's assistance.

## CONCLUSION

For all of these reasons, Defendants' Motions to Decertify and Deny Class Certification (ECF Nos. 175, 176) are GRANTED; Plaintiffs' Motion for Class Certification (ECF No. 182) is DENIED, and the parties' respective partial summary judgment motions (ECF Nos. 210, 218) are DENIED WITHOUT PREJUDICE. The opt-in Plaintiffs are DISMISSED from this action without prejudice. The claims of the five named Plaintiffs remain pending in this case.

IT IS SO ORDERED.

DATED:   March 31, 2017
         Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court