# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN ELLERSICK, DAVID ELLERSICK, LEWIS C. YOUNGS, JR., RICHARD CURRY, JR., and RICHARD H. TEMPLE, on behalf of themselves and all other employees similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MONRO MUFFLER BRAKE, INC. and MONRO SERVICE CORPORATION, <br><br> Defendants. | No. 10-cv-6525G(P) |
| SEAN HOHLT, AARON ROBINSON, ANTHONY GIACONOZZI, and ROBERT HEANEY, on behalf of themselves and all other employees similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MONRO MUFFLER BRAKE, INC., <br><br> Defendant. | No. 10-cv-6154FPG |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release (the "Agreement") is entered into

by and between Monro Inc. ("Monro"), sued herein as Monro Muffler Brake, Inc. and Monro

Service Corporation, and plaintiffs John Ellersick, David Ellersick, Lewis Youngs, Jr., Richard

Curry, Jr., and Richard Temple (collectively, the "Ellersick Plaintiffs"), and Sean Hohlt, Aaron

Robinson, Anthony Giaconozzi, and Robert Heaney (collectively, the "Hohlt Plaintiffs" and,

together with the Ellersick Plaintiffs, the "Plaintiffs") and the individuals they purport to represent as defined herein (hereinafter collectively "Settlement Class Members").

## Recitals

A.    On September 14, 2010, the Ellersick Plaintiffs filed a class and collective action lawsuit against Monro in the United States District Court for the Western District of New York, Civil Action No. 10-CV-6525, which, in amended form, alleges that Monro violated the Fair Labor Standards Act ("FLSA"), the New York Labor Law (the "NYLL"), and the Pennsylvania Wage Payment and Collection Law ("PA WPCL") by failing to properly compensate certain hourly employees for time worked during meal periods, and for preliminary and postliminary work, and further violated the NYLL and PA WPCL by making improper deductions (the "Ellersick Action").

B.    On March 23, 2012, United States Magistrate Judge Marian Payson conditionally certified an FLSA collective action in the Ellersick Action under 29 U.S.C. § 216(b), consisting of current and former technicians and assistant store managers who worked at Monro's service stores in all states in which they operate.

C.    On January 2, 2014, the Hohlt Plaintiffs filed a class and collection action lawsuit against Monro in the United States District Court for the Southern District of Ohio, Civil Action No. 14-CV-00098, alleging that Monro violated the FLSA, the Ohio Minimum Fair Wage Standards Act, the Connecticut Minimum Wage Act, the Massachusetts Minimum Fair Wage Law, and the New Jersey Wage and Hour Law by failing to properly compensate technicians and assistant managers for time worked during meal periods, and for preliminary and postliminary work (the "Hohlt Action").

4845-7534-5756.1
005421-000017

D.      On March 31, 2014, Monro and the Hohlt Plaintiffs agreed to transfer the Hohlt

Action to the United States District Court for the Western District of New York, toll the FLSA

claims asserted on behalf of the putative collective action members by the Hohlt Plaintiffs from

March 5, 2014 until the date of the Court's decisions on certain

decertification/certification/summary judgment motions that were before it in the Ellersick

Action, and to stay all proceedings during this period.

E.      On March 31, 2017, the Court issued a decision and order in the Ellersick Action,

granting Monro's motion to deny class certification under Federal Rule of Civil Procedure 23,

denying Plaintiffs' motion to certify an issue class under Federal Rule of Civil Procedure

23(c)(4), and granting Monro's motion to decertify the collective action under FLSA Section

216(b).

F.      On May 4, 2017, the parties agreed to stay all proceedings in the Ellersick Action

and the Hohlt Action (together, "the Actions"), to toll the FLSA claims asserted by the Ellersick

Plaintiffs, as well as the claims of the putative Rule 23 class members, and to continue the toll of

the FLSA claims asserted by Plaintiffs on behalf of the putative collective action members in the

Hohlt Action, all pending resolution of the Ellersick Plaintiffs' appeals (the "Tolling

Agreement").  On October 16, 2017, the parties agreed to extend the tolling period under the

Tolling Agreement to thirty days after their December 13, 2017 mediation.

G.      Monro denied, and continues to deny, each and every allegation made by

Plaintiffs in the Actions.

H.      Plaintiffs, on behalf of themselves and the Settlement Class Members, and Monro

desire to fully and finally settle and completely resolve all rights, claims, causes of action, and

proceedings and avoid claims or litigation which Plaintiffs and the Settlement Class Members

4845-7534-5756.1
005421-000017

have, or could have, alleged in the Actions against Monro and any of the Released Parties (as defined herein), arising out of the claims alleged in the Actions, or those which could have been alleged, and to enter into a permanent and binding resolution of the rights, obligations and remedies concerning all liability and obligations arising out of the claims alleged therein, or those which could have been alleged.

I.     Plaintiffs' counsel has analyzed and evaluated the merits of the Settlement Class Members' respective claims, contentions, Monro's defenses, and this Agreement as it affects the Settlement Class Members.  After taking into account the foregoing, along with the substantial risks of litigation, Plaintiffs' counsel is satisfied that the terms of this Agreement are fair, reasonable, adequate and equitable, and that a settlement of the Actions is in the best interests of the Settlement Class Members.

J.     Monro, while continuing to deny all allegations of wrongdoing and disclaiming any liability with respect to any and all claims made against it in the Actions, considers it desirable to resolve the Actions on the terms stated herein, in order to avoid further expense, inconvenience, and interference with its ongoing business operations, and to dispose of burdensome litigation, and thus has determined that settlement of the Actions on the terms set forth herein is in its best interest.

K.     This Agreement reflects a compromise between the Plaintiffs and Monro and shall in no event be construed as or deemed to be an admission or concession by any party of the truth or the validity of any substantive or procedural allegation, claim, or defense asserted in the Actions, or in any other action or proceeding, or of any fault, negligence, or breach of any alleged duty on the part of any party, and all such allegations are expressly denied.

4845-7534-5756.1
005421-000017

L.     This Agreement is subject to, and its effectiveness conditioned, upon final approval by the Court and the other conditions precedent as specified in the Agreement Covenants, Paragraph 9, below.

**NOW, THEREFORE**, with no admission of any substantive or procedural fact, claim or liability by Monro, as a negotiated compromise, and in consideration of and in reliance upon the definitions, recitals, promises, covenants, understandings and obligations set forth in this Agreement, Plaintiffs and Monro hereby agree as follows:

### Definitions

The following terms shall have the following meanings:

1.     "Settlement Class Members" means all Monro employees and former employees who opted-into the Actions and who are eligible for a settlement payment pursuant to this Agreement.

2.     "Plaintiffs" means John Ellersick, David Ellersick, Lewis Youngs, Jr., Richard Curry, Jr., Richard Temple, Sean Hohlt, Aaron Robinson, Anthony Giaconozzi, and Robert Heaney.

3.     "Plaintiffs' counsel," for purposes of notice or service, means Rachhana T. Srey, Nichols Kaster, PLLP, 80 South 8th Street, Ste. 4600, Minneapolis, MN 55402.

4.     "Monro's counsel" or "Monro through its counsel," for purposes of notice or service, means Stephen J. Jones, Nixon Peabody LLP, 1300 Clinton Square, Rochester, New York 14604.

5.     "Parties" refers jointly to Plaintiffs and Monro.

6.     "Released Parties" shall mean Monro and any of its owners, parent companies, divisions, subsidiaries, affiliated organizations, trustees, predecessors, successors, transferees,

4845-7534-5756.1
005421-000017

assigns, insurers, officers, directors, members, benefit or pension plans and their plan administrators, employees, agents, and representatives.

7.      "Preliminary Approval" shall mean the date upon which the Court enters an Order granting preliminary approval of the settlement, finding that the terms in this Agreement are within the range of reasonableness and are fair, reasonable, and adequate, and approving notice of this settlement be provided to the Settlement Class Members.

8.      "Final Approval Date" shall mean the date upon which the Court enters an Order granting final approval of the settlement, dismisses the Actions in their entirety with prejudice, and enters judgment.

9.      "Settlement Effective Date" shall mean the date that is thirty-one (31) calendar days following the Final Approval Date.

10.     The "Settlement Administrator" is Rust Consulting, who shall serve as the joint agent of Plaintiffs and Monro.

11.     "Opt-Out Form" shall mean the form executed by Settlement Class Members and returned to Plaintiffs' counsel, post-marked no later than forty-five (45) days after Preliminary Approval by which class members exclude themselves from this settlement and from receiving a settlement payment and avoid becoming parties to and bound by the Agreement.

<u>**Agreement Covenants**</u>

1.      *Settlement Class Certification.*  For purposes of settlement only, and without any admission by any party in this or any other matter, the Parties stipulate to certification of a settlement class consisting of all Settlement Class Members pursuant to Federal Rule of Civil Procedure 23, subject to the terms and conditions set forth herein.  The provisional stipulation to class certification shall not be argued by any of the Parties nor considered by the Court in ruling

6

on the class certification issue in this or any other matter in the event that settlement is not effectuated for any reason.  If not all of the conditions set forth in Paragraph 9, below, are met, then the stipulation to class certification contained herein shall be null and void, and of no force and effect; and each party shall retain all of their rights, remedies, defenses, and contentions for and against class certification.  Under such circumstances, the terms and conditions of the Tolling Agreement entered into by the Parties shall remain in full force and effect.

2.      *Total Settlement Amount.*  Subject to the conditions precedent set forth in Paragraph 9, and as set forth herein, in full settlement of Plaintiffs' and Settlement Class Members' claims, and within five (5) business days of the Effective Date (as defined above), Monro shall pay to the Settlement Administrator the total sum of one million, nine hundred fifty thousand dollars and zero cents ($1,950,000.00) ("Total Settlement Amount").  The Settlement Administrator shall hold the Total Settlement Amount in escrow in an IRC Section 468(b) qualified settlement fund.  As set forth more fully herein, from the qualified settlement fund, the Settlement Administrator shall issue settlement checks to Settlement Class Members, which shall be delivered to Plaintiffs' counsel for distribution to Settlement Class Members, payments to Plaintiffs' counsel for attorneys' fees, out-of-pocket expenses, and costs including settlement administration costs,  a contingency fund used to effectuate the purposes of this settlement, service payments to class representatives, and payment to the Settlement Administrator for its services.  Apart from the Total Settlement Amount, Monro shall not be liable for, and shall make no additional payment for any reason with the sole exception that Monro shall pay the employer's share of any payroll taxes resulting from settlement payments to the Settlement Class Members.

4845-7534-5756.1
005421-000017

3.      *Calculation of Settlement Offers to Settlement Class Members.*  The sum of the

Total Settlement Amount remaining after subtracting (a) the amount of Plaintiffs' counsel's

attorneys' fees ($650,000.00) and out-of-pocket litigation expenses ($67,545.19); (b) settlement

administration costs ($17,000.00 total to the Settlement Administrator and $1,750.00 total to

Nichols Kaster, PLLP); (c) class representative service payments ($10,000.00 total to the

Ellersick Plaintiffs and $2,000.00 total to the Hohlt Plaintiffs); and (d) contingency fund

($5,000.00), constitutes the "Net Allocation Fund" ($1,196,704.81), which shall be distributed to

the Settlement Class Members as set forth herein:

   A.     Each Settlement Class Member who does not opt out of
          the settlement shall receive a pro rata share of the Net
          Allocation Fund based Plaintiffs' counsel's damages
          calculation, which took into consideration, among other
          things, the applicable statutory period, each Settlement
          Class Member's eligible weeks of employment with
          Monro in a qualifying position, individual earnings,
          recorded hours worked, and average assumed unrecorded
          hours worked (except that no Settlement Class Member
          shall receive less than One Hundred Dollars and Zero
          Cents ($100.00) as a settlement payment).

   B.     Plaintiffs' counsel agrees to provide Monro a reasonable
          allocation of the Net Allocation Fund for each Settlement
          Class Member within ten (10) days after receipt of
          updated data from Monro.

4.      *Payments to Settlement Class Member and Taxation.*  One settlement check will

be issued to each Settlement Class Member.  One-half of the each Settlement Class Member's

individual settlement amount will be reported as wages for tax purposes with each Settlement

Class Member receiving an IRS Form W-2 for this portion of the settlement amount.  Normal

payroll taxes will be withheld from this amount.  The second half of the settlement amount shall

constitute payment for liquidated damages and will be reported on an IRS Form 1099.  Payroll

taxes will not be withheld from this half.  Each Settlement Class Member shall be obligated to

8

obtain his or her own independent tax advice concerning the proper income reporting and tax obligations for any and all payments and/or other remuneration he or she receives under this Agreement and shall further assume the responsibility of remitting to the Internal Revenue Service and any other relevant taxing authorities any and all amounts required by law to be paid out of any monies received, or other remuneration obtained, under this Agreement, without any contribution whatsoever from any of the Released Parties or Plaintiffs' counsel.  Nothing in this Agreement shall be construed as Defendant or Plaintiffs' counsel providing any advice regarding the reporting or payment of taxes or the tax consequences of a Settlement Class Member's participation in any portion of this Agreement.

5.     *Plaintiffs' Attorneys' Fees, Costs, and Expenses.*  Monro shall not oppose the payment of Plaintiffs' counsel's attorneys' fees, costs and expenses in the amounts set forth above and takes no other position on the award of those amounts.

6.     *Service Payments.*  Because of the time, effort, and expense expended by Plaintiffs John Ellersick, David Ellersick, Lewis Youngs, Jr., Richard Curry, Jr., Richard Temple, Sean Hohlt, Aaron Robinson, Anthony Giaconozzi, and Robert Heaney, the Court's approval of this Agreement will also include the payment of a total of $12,000.00, or such amount as modified by the Court within its discretion, for their services to be paid by the Settlement Administrator from the Total Settlement Amount (and not in addition thereto). Monro shall not oppose such application for these service payments and takes no other position on the award of those amounts.

7.     *Release.*  In consideration of the Total Settlement Amount and the Agreement made herein, and upon the Effective Date, Plaintiffs and the Settlement Class Members and all their respective agents, successors, heirs, administrators, executors, and assigns, hereby release

9

and forever discharge the Released Parties, from any and all claims, causes of action, demands, rights, damages, requests for equitable relief, expenses, interest, penalties, and attorneys' fees, arising out of the Released Parties' alleged non-payment of wages, and/or overtime compensation for work performed, including but not limited to, claims that were or could have been asserted in the Actions, claims for unpaid wages, deductions from wages, or overtime compensation, contractual or statutory overtime premium rates, under any and all state and federal laws or common law, orders, and regulations, including without limitation, the Fair Labor Standards Act, the New York Labor Law, the New York Minimum Wage Act, the Ohio Minimum Fair Wage Standards Act, the Connecticut Minimum Wage Act, the Massachusetts Minimum Fair Wage Law, and the New Jersey Wage and Hour Law, from the commencement of employment with Monro through and including the Final Approval Date.  No claims arising after the Final Approval Date are being released by this Agreement.  This Release does not apply to Settlement Class Members who submit Opt-Out Forms pursuant to Paragraph 11 of the Definitions of this Agreement ("Opt-out").

8.    *Class Notice.*  No later than seven (7) days following Preliminary Approval of this Agreement, a notice of settlement shall be distributed by Plaintiffs' counsel by mail to the last known address of each Settlement Class Member and by email. Among other things, the notice of settlement shall provide:

> A.    Notice of the terms of this Agreement including the release and its legal effect, the date and time and place of the final fairness and approval hearing ("Final Approval Hearing"), an Opt-Out Form and the procedure for opting out of the settlement, and if the Settlement Class Member does not opt-out, his/her right to object and appear at the hearing individually or through counsel, the potential tax consequences to each Settlement Class Member associated with the settlement, the payments to Plaintiffs' counsel, and payments to Plaintiffs for their services.

4845-7534-5756.1
005421-000017

B.   As to any settlement notices that are Returned
Undeliverable Mail ("RUM"), within 3 business days of
receipt by such RUM notice, Plaintiffs' counsel provide
Monro a list of RUM notices to Monro for it to determine
whether it has updated contact information for these
individuals. If Monro does not have updated information,
then Plaintiffs' Counsel shall attempt to locate the
Settlement Class Member through other means such as
performing a routine skip trace procedure.

C.   To the extent that new or updated addresses of Settlement
Class Members are discovered as discussed above,
Plaintiffs' counsel shall direct reasonable notice to that
individual, but such notice shall not extend the deadlines
by which that individual is required to take action under
the terms of this Agreement.

8.   *Communication with Class.*  Monro agrees that should any Settlement Class
Member contact it, or its counsel, about the Actions or the proposed settlement, Monro will not
respond but instead direct that such inquiries be addressed to Plaintiffs' counsel, whose contact
information will be provided in the Class Notice.

9.   *Conditions Precedent.*  This Agreement will become final and effective only upon
the occurrence of all of the following events: (A) the Court enters an Order granting preliminary
approval of the settlement and certification of the Settlement Class for the purposes of
settlement; and (B) the Court enters an Order—subject to and conditioned upon the requisite 90-
day notice and non-objection period from all relevant government officials pursuant to the Class
Action Fairness Act ("CAFA")—granting final approval of the settlement, including dismissal of
the Actions in their entirety with prejudice.

10.   *Settlement Administrator.*  The Parties have selected Rust Consulting as the
Settlement Administrator to perform functions such as cutting settlement checks and issuing and
processing tax forms in connection with the settlement payments.  Expenses to pay the

4845-7534-5756.1
005421-000017

Settlement Administrator shall be deducted from the Total Settlement Amount after providing the parties with fifteen (15) days advance notice of such expenses.

11.     *Settlement Check Language and Cashing Checks*. The settlement payment checks issued to the Settlement Class Members shall bear the following statement: "By endorsing this check, I consent to be a party plaintiff in the FLSA portions of the Actions, be bound by the terms of the settlement of my FLSA claim, and have the Plaintiffs and their Counsel represent me pursuant to 29 U.S.C. § 216(b)." All settlement checks not cashed by Settlement Class Members within the sixty-day (60) time period in which to do so (the "First Settlement Administration Period") shall be void. Upon request by Plaintiffs' counsel, the Settlement Administrator shall provide Plaintiffs' counsel with a list of any uncashed checks after forty-five (45) days of that sixty (60) day period have elapsed. The Settlement Administrator shall reissue any lost or damaged settlement checks upon the request to Plaintiffs' Counsel. Amounts allocated to uncashed checks shall revert to the Net Allocation Fund and be reallocated pro rata to the Settlement Class Members who cashed their checks during the First Settlement Administration Period based on the same formula used for the first distribution. These amounts will be distributed during a "Second Settlement Administration Period" within ten (10) business days of the end of the First Settlement Administration Period.

12.     *Filing of Agreement, Class Notice, and Motion for Preliminary Approval by Court; CAFA Notice.* No later than ten (10) business days from execution of this Agreement, Plaintiffs will file the Agreement, proposed notice of settlement, and a Motion for Preliminary Approval of the Class/Collective Action Settlement Agreement and Release with the Court. Within seven (7) days thereafter, Monro will mail notices of the Parties' proposed settlement to an "Appropriate Federal Official" and "Appropriate State Officials" as required by CAFA.

4845-7534-5756.1
005421-000017

13.     *Final Approval Hearing.*  Within ninety (90) days of Preliminary Approval, the Court will hold the Final Approval Hearing.  At the Final Approval Hearing, the Court will review any objections to the settlement with the Parties and any Settlement Class Member who chooses to appear.  The Parties have the right to present arguments and evidence regarding any such objections.  To be heard at the Final Approval Hearing, a Settlement Class Member must submit any objections in writing to Plaintiffs' counsel (who shall serve such objections on Defendants' counsel) and such objections must be postmarked no later than forty-five (45) days following Preliminary Approval.

14.     *No Impact On Benefits.*  Payments made under this Agreement are not intended to: (a) form the basis for additional contributions to, benefits under, or any other monetary entitlement under; (b) count as earning or compensation with respect to; or (c) be considered to apply to, or be applied for purposes of, any of the Released Parties' bonus, pension, and retirement programs, 401(k) plans, or any other benefit plan.  The amounts paid pursuant to this Agreement are not compensation or wages for hours worked, hours paid or any similar measuring term as defined by any plans and programs for purposes of eligibility, vesting, benefit accrual or any other purpose.

15.     *Court approval.*  If the Court does not approve any non-monetary aspect of the settlement as set forth herein, the Parties will work in good faith to conform this Agreement to resolve the Court's objections.

16.     *Tip-Over.*  In the event that five percent (5%) or greater of the Settlement Class Members submit Opt-Out Forms pursuant to Paragraph 11 of the Definitions of this Agreement, Monro, in its sole and exclusive discretion, may exercise its right to declare the settlement, and the terms and provisions of this Agreement, null and void.

4845-7534-5756.1
005421-000017

17.     *Termination of Settlement.*  In the event that this Agreement is not finally approved by the Court, that the Effective Date does not occur, that Monro exercises its option under Paragraph 16, or to the extent that the termination, cancellation or voiding of the Agreement is otherwise provided in this Agreement, the parties shall resume the Actions at that time as though no agreement had been entered into, and no payments shall be made by Monro to anyone in accordance with the terms of this Agreement.  In such event, other than this Paragraph 17, the terms and provisions of the Agreement shall be null and void and have no further force and effect with respect to the Parties and Settlement Class Members and shall not be used in the Actions or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Agreement shall be treated as vacated *nunc pro tunc*. This Agreement shall not constitute and shall not be deemed a waiver of any substantive or procedural defense or any argument Monro may have with respect to wages allegedly owed to the Settlement Class Members or the appropriateness of the Settlement Class Members or any other persons to be certified as a class or collective action.  This Agreement cannot and shall not be discoverable or used in evidence in any litigation against Monro.   If the Agreement is terminated, then the Tolling Agreement is extended to thirty (30) days after termination.

### General Terms Regarding Construction of Agreement

18.     *No representations.*  This Agreement sets forth the entire agreement between the parties and supersedes all prior agreements or understandings, written or oral, between the parties.  It is the intention of the Parties that this Agreement be consistent with the Parties' previously-executed Memorandum of Understanding. Except as expressly stated in this Agreement, no party hereto has made any statement or representation to any other party regarding any fact relied upon by any other party in entering into this Agreement, and each party

14

specifically does not rely upon any statement, representation or promise of any other party in executing this Agreement.

19.     *Consent.*  This Agreement has been carefully read by all Parties and the contents hereof are known and understood by all Parties.  The Parties have each received independent legal advice from attorneys of their choice with respect to the preparation, review, and advisability of executing this Agreement.  Prior to the execution of this Agreement by each party, each party's attorney has reviewed the Agreement and each party acknowledges that such party has executed the Agreement after independent investigation and without fraud, duress or undue influence.

20.     *Successors.*  Subject to the provisions otherwise contained in this Agreement, this Agreement shall inure to the benefit of and be binding upon the heirs, successors, and assigns of the respective parties to this agreement.

21.     *No assignments.*  Each party represents that he or she has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, his or her rights in the Actions or any interest therein, or any other interest in any claims or claims arising out of any of the matters which are the subject of the recitals herein.

22.     *Negotiated Agreement.*  This Agreement and each of its terms constitute a negotiated contract and not merely a recital and are the result of negotiation among the parties. In interpreting this Agreement, there shall not be a presumption of interpretation against any party, and each party expressly waives the doctrine of *contra proferentum.*

23.     *No Admissions.*  This Agreement is the result of a compromise among the Parties and nothing in this Agreement shall constitute an admission of liability by any party with regard to the subject matter of the Action and of this Agreement; or with respect to the composition or

4845-7534-5756.1
005421-000017

certification of a class or collective action under the Federal Rules of Civil Procedure, the Fair

Labor Standards Act, the New York Civil Practice Law and Rules, the NYLL, the PA WPCL,

the Pennsylvania Rules of Civil Procedure, the Ohio Minimum Fair Wage Standards Act, the

Ohio Rules of Civil Procedure, the Connecticut Minimum Wage Act, the Connecticut Rules for

the Superior Court, the Massachusetts Minimum Fair Wage Law, the Massachusetts Rules of

Civil Procedure, the New Jersey Wage and Hour Law, the New Jersey Rules of Civil Procedure,

or any other applicable law.

     24.    *Warranty of authority.*  Each of the signatories hereto warrants and represents that

he or she is competent and authorized to enter into this Agreement on behalf of the party for

whom he or she purports to sign it.

     25.    *Evidentiary Privilege.*  This Agreement shall be deemed to fall within the

protection afforded compromises and offers to compromise by Rule 408, Federal Rules of

Evidence, Section 4547, New York Civil Practice Law and Rules, Section 408 of the

Pennsylvania Rules of Evidence, Section 408 of the Ohio Rules of Evidence, Section 4-8 of the

Connecticut Code of Evidence, Section 408 of the Massachusetts Guide to Evidence, or Rule 408

of the New Jersey Rules of Evidence.

     26.    *Applicable law.*  This Agreement shall be governed by, interpreted under, and

construed and enforced in accordance with the domestic laws of the State of New York, without

regard to conflicts of laws principles.

     27.    *Further actions.*  The Parties agree to do such further acts and things and to

execute and deliver such additional agreements and instruments as the other may reasonably

require to consummate, evidence or confirm the agreements contained herein in the manner

contemplated hereby.  Monro and Plaintiffs mutually agree to cooperate to ensure the

4845-7534-5756.1
005421-000017

expeditious approval and administration of this settlement.   By signing this agreement, John Ellersick, David Ellersick, Lewis Youngs, Jr., Richard Curry, Jr., Richard Temple, Sean Hohlt, Aaron Robinson, Anthony Giaconozzi, and Robert Heaney each expressly agrees that he will not opt-out of this settlement.

28.     *Duty of good faith performance.*  The Parties further agree not to take any action which would interfere with the performance of this Agreement by any of the Parties hereto or which would adversely affect any of the rights provided for herein.

29.     *No third party beneficiaries.*  The Parties do not intend to confer any benefit hereunder on any person, firm or corporation other than the Parties hereto.

30.     *Written modifications.*  As approved by the Court, this Agreement may not be modified in whole or in part except by an agreement in writing signed by all Parties, and executed in the same manner as this Agreement.

31.     The Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all parties.

4845-7534-5756.1
005421-000017

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement:

_____     Dated: 2/13/2018
John Ellersick

_____     Dated: _____
David Ellersick

_____     Dated: _____
Lewis Youngs, Jr.

_____     Dated: _____
Richard Curry, Jr.

_____     Dated: _____
Richard Temple

_____     Dated: _____
Sean Hohlt

_____     Dated: _____
Aaron Robinson

_____     Dated: _____
Anthony Giaconozzi

_____     Dated: _____
Robert Heaney,
on behalf of themselves and all other
employees similarly situated.

18

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement:

_____     Dated: _____
John Ellersick

_____*David Ellersick*_____     Dated: 2\12\18
David Ellersick

_____     Dated: _____
Lewis Youngs, Jr.

_____     Dated: _____
Richard Curry, Jr.

_____     Dated: _____
Richard Temple

_____     Dated: _____
Sean Hohlt

_____     Dated: _____
Aaron Robinson

_____     Dated: _____
Anthony Giaconozzi

_____     Dated: _____
Robert Heaney,
on behalf of themselves and all other
employees similarly situated.

18

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement
Agreement:

_____     Dated: _____
John Ellersick

_____     Dated: _____
David Ellersick

_Lewis C. Youngs Jr._                Dated: _2-15-2018_
Lewis Youngs, Jr.

_____     Dated: _____
Richard Curry, Jr.

_____     Dated: _____
Richard Temple

_____     Dated: _____
Sean Hohlt

_____     Dated: _____
Aaron Robinson

_____     Dated: _____
Anthony Giaconozzi

_____     Dated: _____
Robert Heaney,
on behalf of themselves and all other
employees similarly situated.

18

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement:

_____     Dated: _____
John Ellersick

_____     Dated: _____
David Ellersick

_____     Dated: _____
Lewis Youngs, Jr.

_Richard J. Curry Jr_____     Dated: _2-13-18_
Richard Curry, Jr.

_____     Dated: _____
Richard Temple

_____     Dated: _____
Sean Hohl

_____     Dated: _____
Aaron Robinson

_____     Dated: _____
Anthony Giaconozzi

_____     Dated: _____
Robert Heaney,
on behalf of themselves and all other
employees similarly situated.

15

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement:

_____          Dated: _____
John Ellersick

_____          Dated: _____
David Ellersick

_____          Dated: _____
Lewis Youngs, Jr.

_____          Dated: _____
Richard Curry, Jr.

_____*Richard H Temple*_____          Dated: 02/09/2018
Richard Temple

_____          Dated: _____
Sean Hohlt

_____          Dated: _____
Aaron Robinson

_____          Dated: _____
Anthony Giaconozzi

_____          Dated: _____
Robert Heaney,
on behalf of themselves and all other
employees similarly situated.

18

IN  WITNESS  WHEREOF,  the  undersigned  have  duly  executed  this  Settlement Agreement:

_____          Dated: _____
John Ellersick

_____          Dated: _____
David Ellersick

_____          Dated: _____
Lewis Youngs, Jr.

_____          Dated: _____
Richard Curry, Jr.

_____          Dated: _____
Richard Temple

_____          Dated: 2/15/2018
Sean Hohlt

_____          Dated: _____
Aaron Robinson

_____          Dated: _____
Anthony Giaconozzi

_____          Dated: _____
Robert Heaney,
on behalf of themselves and all other
employees similarly situated.

18

IN   WITNESS   WHEREOF,   the   undersigned   have   duly   executed   this   Settlement

Agreement:

_____     Dated: _____
John Ellersick

_____     Dated: _____
David Ellersick

_____     Dated: _____
Lewis Youngs, Jr.

_____     Dated: _____
Richard Curry, Jr.

_____     Dated: _____
Richard Temple

_____     Dated: _____
Sean Hohlt

_____     Dated: _2/10/18____
Aaron Robinson

_____     Dated: _____
Anthony Giaconozzi

_____     Dated: _____
Robert Heaney,
on behalf of themselves and all other
employees similarly situated.

18

IN  WITNESS  WHEREOF,  the  undersigned  have  duly  executed  this  Settlement
Agreement:

_____      Dated: _____

John Ellersick

_____      Dated: _____

David Ellersick

_____      Dated: _____

Lewis Youngs, Jr.

_____      Dated: _____

Richard Curry, Jr.

_____      Dated: _____

Richard Temple

_____      Dated: _____

Sean Hohlt

_____      Dated: _____

Aaron Robinson

_____      Dated: 02-14 2018

Anthony Giaconozzi

_____      Dated: _____

Robert Heaney,
on behalf of themselves and all other
employees similarly situated.

18

4845-7534-5756.1
005421-000017

IN WITNESS WHEREOF, the undersigned have duly executed this Settlement Agreement:

_____     Dated: _____
John Ellersick

_____     Dated: _____
David Ellersick

_____     Dated: _____
Lewis Youngs, Jr.

_____     Dated: _____
Richard Curry, Jr.

_____     Dated: _____
Richard Temple

_____     Dated: _____
Sean Hohlt

_____     Dated: _____
Aaron Robinson

_____     Dated: _____
Anthony Giaconozzi

_____     Dated: _02/09/2018_
Robert Heaney,
on behalf of themselves and all other
employees similarly situated.

18

**NICHOLS KASTER, PLLP**

_____
Date

Rachhana T. Srey
Counsel for Plaintiffs and Settlement Class Members

**MONRO, INC.**

By: _____

Printed Name: _____

_____
Date

Title: SVP - GC _____

**NIXON PEABODY LLP**

_____
Date

Stephen J. Jones
Counsel for Defendants

19